Scott W. Wellman, SBN: 82897
Christopher Wellman, SBN: 304700
**WELLMAN & WARREN LLP**
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
Tel: (949) 580-3737
Fax: (949) 580-3738

Attorneys for Plaintiff,
Eaconomy, LLC

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EACONOMY, LLC, a Delaware Limited Liability Company,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>AUVORIA PRIME LLC, a Wyoming Limited Liability Company, SAL LETO, an individual, VANESSA LETO, an individual, WILLIAM (BILL) WYNNE, an individual, KAREEM MARADONA, an individual, TYLER MACKECHNIE, an individual, SARAH WALDROP, an individual, DONTA LEWIS, an individual, MICHAEL MANUEL, an individual, DARIK ALEXANDER, an individual, CAMERON KERKAR, an individual, CASEY HOLLADAY, an individual, KANOA NARTATEZ, an individual, and BOLT CAPITAL, a Nevis Company, OMAR LOPEZ, an individual, MAURICE KATZ, an individual, JOSHUA PHAIR, an individual<br><br>　　　　　　Defendants. | Case No.:<br>Judge:<br>Dept.:<br><br>**COMPLAINT FOR:**<br><br>1. **DEFENSE OF TRADE SECRETS ACT;**<br>2. **MISAPPROPRIATION OF TRADE SECRETS (CC§3426 ET. SEQ.)**<br>3. **BREACH OF FIDUCIARY DUTY;**<br>4. **BREACH OF CONTRACT;**<br>5. **FRAUD AND DECEIT;**<br>6. **DEFAMATION;**<br>7. **UNJUST ENRICHMENT; AND**<br>8. **UNFAIR BUSINESS PRACTICES (VIOLATION OF BUS.& PROF. CODE § 17200 ET SEQ.)**<br>9. **INTERFERENCE WITH CONTRACTUAL RELATIONS**<br>10. **INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE.**<br><br>**JURY TRIAL DEMANDED** |

WELLMAN & WARREN
Attorneys at Law
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
(949) 580-3737

1

**COMPLAINT**

Plaintiff EACONOMY, LLC ("EACONOMY") alleges as follows:

This case involves unlawful conduct on the part of certain former executive officers and other key persons of EACONOMY to start their own company, AUVOIRA PRIME, stealing the trade secrets and other assets of EACONOMY for AUVORIA PRIME, and then systematically taking steps to put EACONOMY out of business. It was a coup d'etat orchestrated by the defendants to move all of EACONOMY'S business to their new company and put EACONOMY out of business.

**PARTIES**

1. Plaintiff EACONOMY is a Delaware limited liability company that is qualified to do business in the State of California, and with corporate headquarters in the City of Fresno, State of California. The sole member of EACONOMY is Hassan Mahmoud who is a resident of the State of California.

2. Defendant AUVORIA PRIME, LLC ("AUVORIA") is a Wyoming limited liability company with its principal place of business located at 30 N. Gould St., Suite R, Sheridan Wyoming 82801. On information and belief, the sole member of AUVORIA is SAL LETO who is a resident of Tennessee. AUVORIA conducts substantial business within the State of California.

3. Defendant SAL LETO ("S. LETO") is a resident of Tennessee and a founder and executive officer of AUVORIA. He was formally an owner and an officer of EACONOMY, State of California.

4. Defendant ROSARIO LOPEZ (a/k/a VANESSA LETO) ("V. LETO") is a resident of Tennessee and a founder and executive officer of AUVORIA. She is the wife of defendant SAL LETO and was formally affiliated with EACONOMY.

5. Defendant OMAR LOPEZ is a resident of Tennessee and a founder and executive officer of AUVORIA. He was formerly an employee of Eaconomy.

WELLMAN & WARREN
Attorneys at Law
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
(949) 580-3737

2

**COMPLAINT**

6. Defendant WILLIAM (BILL) WYNNE ("WYNNE") is a resident of North Carolina and a founder and executive officer of AUVORIA. He was formally an officer of EACONOMY.

7. Defendant JOSHUA PHAIR ("PHAIR") is a resident of Utah and a consultant.

8. Defendant KAREEM MARADONA ("MARADONA") is a resident of North Carolina and a founder and executive officer of AUVORIA. He was formally an employee of EACONOMY.

9. Defendant MAURICE KATZ ("KATZ") is a resident of Florida. KATZ was a former top Independent Software Partner (i.e. distributor) of EACONOMY.

10. Defendant TYLER MACKECHNIE ("MACKECHNIE") is a resident of Florida. MAKENCHENIE was a former top Independent Software Partner (i.e. distributor) of EACONOMY.

11. Defendant SARAH WALDROP ("WALDROP") is a resident of Florida. WALDROP was a former top Independent Software Partner (i.e. distributor) of EACONOMY.

12. Defendant DONATA LEWIS ("LEWIS") is a resident of Georgia. LEWIS was a former top Independent Software Partner (i.e. distributor) of EACONOMY.

13. Defendant MICHAEL MANUAL ("MANUAL") is a resident of North Carolina. MANUAL was a former top Independent Software Partner (i.e. distributor) of EACONOMY.

14. Defendant DARIK ALEXANDER ("ALEXANDER") is a resident of Florida. ALEXANDER was a former top Independent Software Partner (i.e. distributor) of EACONOMY.

15. Defendant CAMERON KERKAR ("KERKAR") is a resident of Oregon. KERKAR was a former top Independent Software Partner (i.e. distributor) of EACONOMY.

16. Defendant CASEY HOLLADAY ("HOLLADAY") is a resident of Florida. HOLLADAY was a former top Independent Software Partner (i.e. distributor) of EACONOMY.

WELLMAN & WARREN
Attorneys at Law
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
(949) 580-3737

3

**COMPLAINT**

17. Defendant BOLT CAPITAL HOLDINGS GROUP LIMITED ("BOLT") is a Nevis entity with its principal place of business in Texas. BOLT does substantial business in the State of California.

18. At all times herein mentioned, each of the Defendants named herein was the alter ego, agent, partner, co-conspirator, employee or employer of each of the other Defendants, and was at all times mentioned herein acting within the course and scope of such agency, partnership, conspiracy and employment.

19. MACKECHNIE, WALDROP, LEWIS, MANUAL, ALEXANDER, KERKAR, and HOLLADAY are all known as the "distributor defendants." Each of them has entered into an agreement requiring arbitration with respect to any disputes arising out of their agreement with EACONOMY. These distributor defendants are named in this action for the purpose of obtaining provisional remedies against them only. Indeed, the agreement between EACONOMY and the distributor defendants specifically states that "Nothing in these Terms and Conditions shall prevent eaconomy from applying to and obtaining from any court having jurisdiction a writ of attachment, temporary injunction, preliminary injunction, permanent injunction, or other available relief to safeguard and protect eaconomy's interest prior to, during, or following the filing of any arbitration of another proceeding, or pending the rendering of a decision or award in connection with any arbitration or other proceeding." After any such provisional remedies are ordered, EACONOMY will seek a stay of this action against these distributor defendants so that the claims may be adjudicated pursuant to the arbitration clause.

## JURISDICTION

20. This court has subject matter jurisdiction under the federal Defense of Trade Secrets Act (18 U.S.C. §1833(b)(3)) pursuant to federal question jurisdiction under 28 U.S.C. §1351.

WELLMAN & WARREN
Attorneys at Law
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
(949) 580-3737

4

**COMPLAINT**

21. This court also has subject matter jurisdiction under the 28 U.S.C. §1332 as there is complete diversity in this action and the amount in controversy exceeds $75,000.

22. With respect to the other claims for relief this court has subject matter jurisdiction pursuant to its pendent and ancillary powers and as stated in 28 U.S.C. §1367.

23. This court has personal jurisdiction over each of the non-distributor defendants as each conduct substantial conduct in California, and each has targeted and purposefully availed itself of the rights and privileges of doing business in California.

24. This court has personal jurisdiction over each of the distributor defendants in that each was and is subject to a distributor agreement which contained a choice of forum provision requiring the "jurisdiction and venue of any matter pursuant to this agreement shall reside in Fresno, California, USA."

## GENERAL ALLEGATIONS

25. EACONOMY is in the business of selling and licensing software programs that allows the user, after setting certain discretionary criteria, to trade in the FOREX markets (i.e the foreign currency exchange markets). EACONOMY uses the "network marketing" model (also known as the multilevel marketing or MLM model) to distribute its software products.

26. "Network marketing" marketing companies such as EACONOMY, market and distribute their products through a network of independent distributors. In the EACONOMY model, the independent distributors are called an ISP which stands for Independent Software Partner. A distributor can earn commissions on the sale of products by it as well as the sale of products of those distributors aligned in multiple levels beneath the distributor (hence the name multilevel marketing). The line of distributors aligned below any distributor is known as that distributor's "downline." Other well-known "network marketing" companies include Amway and Herbalife.

WELLMAN & WARREN
Attorneys at Law
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
(949) 580-3737

5

**COMPLAINT**

27. The base of distributors is the life-blood of any multilevel marketing company and it is no different with EACONOMY. Development of the distributor base takes a significant amount of time and the investment of hundreds of thousands, if not millions of dollars. The data base consisting of the list of distributors, their rank, their contact information, their payment history, their product order history, their pricing history, their customer contact information, their bonus history as well as other information is a prime asset of EACONOMY and are kept on EACONOMY'S computerized servers with restricted access. Access to this data base can only be achieved through a password. In other words, the list of distributors (which includes their contact information) is akin to a customer list and is maintained in confidence.

28. EACONOMY goes to extensive lengths to maintain the secrecy of its data base. Not only is access to the computerized base strictly controlled, but any distributor must agree to EACONOMY'S policies and procedures, which specifically state that the distributor list constitutes a proprietary asset of EACONOMY.

29. In addition, each distributor, prior to becoming a distributor, expressly agrees to maintain the confidentiality of EACONOMY's proprietary information and to abide by the following written policy:

> **Downline Genealogy Reports**
> The eaconomy Downline Genealogy Reports are confidential and contain proprietary business trade secrets. An ISP may not use the reports for any purpose other than for developing their eaconomy business. During any term of the ISP User Agreement and for a period of five (5) years after the termination or expiration of the ISP User Agreement between Independent Sales Associate and eaconomy, for any reason whatsoever, an ISP shall not, on his/her own behalf or on behalf of any other person, partnership, association, corporation, or other entity: disclose any information contained in the reports to any third party; use the reports to compete with eaconomy or recruit or solicit any ISP or Customer listed on the reports to participate in other multilevel marketing ventures. This provision shall survive the termination or expiration of this Agreement.

WELLMAN & WARREN
Attorneys at Law
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
(949) 580-3737

6

**COMPLAINT**

30. The distributors also expressly agree to not use EACONOMY's proprietary information about its sales organization to compete either directly or indirectly with the company.

31. EACONOMY expends a great deal of its money, time, and effort to build and promote its distributor base. To further protect this distributor base, EACONOMY's agreement prohibits distributors from promoting other MLM companies or products at EACONOMY events. Such conduct is considered an unlawful and unethical bait and switch tactic where the person lures in a prospective customer or distributor to an EACONOMY event and then suddenly pivots and starts to pitch another MLM company or product. The EACONOMY agreement with its distributors addresses this as follows:

> **Unauthorized Recruiting**
> As an independent contractor, ISP's may participate in other direct selling or network marketing or multi-level marketing ventures (collectively, "multi-level marketing"), and ISP's may engage in selling activities related to non-eaconomy products and services if they desire to do so. Although an ISP may elect to participate in another multi-level marketing opportunity, he/she is prohibited from unauthorized recruiting activities, which include the following: recruiting or enrolling eaconomy customers or ISP's for other multi-level marketing business ventures, either directly or through a third party. This includes, but is not limited to, presenting or assisting in the presentation of other multi-level marketing business ventures to any eaconomy Customer or ISP, or implicitly or explicitly encouraging any eaconomy Customer or ISP to join other business ventures. It is a violation of this policy to recruit or enroll a eaconomy Customer or ISP for another multi-level marketing business, even if the ISP does not know that the prospect is also an eaconomy Customer or ISP; producing any literature, tapes, or promotional material of any nature for another multi-level marketing business which is used by the ISP or any third person to recruit eaconomy Customers or ISP for that business venture; selling, offering to sell, or promoting any competing products or services to eaconomy Customers or ISP. The only exception to this rule is that direct customer and personal enrollees of the ISP can be exposed to a product or service (first level, personally sponsored only). eaconomy may cancel the ISP's agreement for violations to this provision. In addition, when an ISP participates in other multi-level marketing ventures, the ISP may not participate in any eaconomy leadership meetings, conferences, qualification seminars, and the like.

32. On February 14, 2020, defendants, S. LETO and WYNNE, went to Atlanta, Georgia to host an EACONOMY event. At the event were many of EACONOMY's top distributors. During the event S. LETO and WYNNE had the top distributors sign a Non-Disclosure Agreement ("NDA")

WELLMAN & WARREN
Attorneys at Law
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
(949) 580-3737

7

**COMPLAINT**

purportedly because they wanted to discuss with the distributors an update regarding EACONOMY's merchant processor. However, EACONOMY learned that these defendants had the distributors sign the NDA because they did not discuss EACONOMY'S merchant processor, but instead pitched the distributors to leave EACONOMY and join their new company, defendant AUVORIA PRIME. That is, these executive officers used a EACONOMY event to solicit top EACONOMY distributors to leave it and join their new company.

33. When EACONOMY learned of this, it confronted S. LETO and WYNNE who said that they had decided to start their own company. S. LETO and WYNNE along with defendants MARADONA and PHAIR then agreed on February 18, 2020 to resign from EACONOMY.

34. As a result of these actions, EACONOMY conducted an investigation and discovered the following, none of which was ever disclosed to EACONOMY.

    a. Defendants S. LETO, V. LETO, WYNNE, and MARADONA had formed a new company, defendant AUVORIA PRIME a month prior on January 13, 2020.

    b. The products of AUVORIA PRIME were identical to the products of EACONOMY.

    c. The compensation plan of AUVORIA PRIME was virtually identical to the compensation plan of EACONOMY.

    d. On information and belief, S. LETO, V. LETO, WYNNE, and MARADONA have for many months been secretly meeting with the top distributors of EACONOMY and soliciting them to leave EACONOMY and join AUVORIA PRIME by disparaging and slandering the other officers and operators of EACONOMY. Indeed, S. LETO has recently posted a video wherein he represents that he has been working on building the new company for the past 7 months. That is, during the

WELLMAN & WARREN
Attorneys at Law
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
(949) 580-3737

8

**COMPLAINT**

time these defendants were working as officers of EACONOMY they were secretly plotting to take its business and destroy the company.

e. On further information and belief, S. Leto, V. Leto, Wynne, Maradona, and Phair, knowing that they were conspiring together to steal Eaconomy's relationships and assets, convinced Eaconomy's CEO, Ms. Candace Ross, and Eaconomy's President, Mr. Hassan Mahmoud, to terminate Eaconomy's relationship with its existing service provider and to allow S. Leto, Wynne, Maradona and Phair to develop and implement a back office for Eaconomy. This back office never functioned properly, but because of the positions that S. Leto, Wynne, Maradona and Phair held in relation to the development and maintenance of Eaconomy's back office, all control was ceded to them and neither of Eaconomy's CEO, Ms. Candance Ross, nor Eaconomy's President, Mr. Hassan Mahmoud, had any control over, or access to, Eaconomy's back office, despite numerous requests for such access.

f. After S. LETO, V. LETO, WYNNE, and MARADONA left EACONOMY, EACONOMY suddenly discovered that its back office, which is its administrative software, that allows it to collect monies from its sales, calculate commissions owed, and pay distributors' commissions, had been shut-off by S. Leto, V. Leto, Wynne, Maradona, and Phair. The inability to pay distributors commissions to its distributors' can be a death knell to any MLM company. EACONOMY immediately made a demand on these defendants to reinstate its back office. At first the defendants refused to respond. EACONOMY then sent an attorney demand letter. Only then did these defendants turn the back office back on. However, even

WELLMAN & WARREN
Attorneys at Law
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
(949) 580-3737

9

**COMPLAINT**

though the defendants turned the back office back on, it had restricted capability. This was done purposefully by the defendants to cause significant delays in the ability of EACONOMY to pay commissions to its distributors in order to create distrust between EACONOMY and its distributors and to convince EACONOMY'S distributors to leave EACONOMY and join AUVORIA PRIME.

g. These defendants increased their attacks on EACONOMY by spreading rumors and placing internet and social media posts that EACONOMY was going out of business. This was done to convince the EACONOMY distributors to leave it and join AUVORIA PRIME.

h. When EACONOMY discovered that the back office was working on a restricted basis, it hired an IT development team to diagnose the problem.  This development team concluded that the defendants had sabotaged the EACONOMY back office. In addition, the development team concluded that the defendants had stopped EACONOMY's ability to gain deposits from its merchant bankers for at least a week, giving the appearance that EACONOMY was out of business.

i. EACONOMY had been working closely with VisiKard, Inc. Defendats KATZ and BOLT to develop its software to allow its products to be compliant with the laws of the United States.   This software modification included an App which was to be provided to EACONOMY'S product customers. When accessed, this App would allow the customer to make certain discretionary commands.  EACONOMY had paid $25,000 to KATZ and approximately $165,000 to BOLT for the App and such software improvements.  However, when the developed software and App were provided to EACONOMY it did not work.  On information and belief, BOLT,

VisiKard, and KATZ have provided the fully functioning software and App to AUVORIA PRIME and intentionally provided defective and faulty software to EACONOMY as part of the conspiracy to steal company assets and to destroy EACONOMY. It other words, the Defendants have taken the fully functioning software that was paid for by EACONOMY for their own use and benefit while providing a defective version of the software to EACONOMY in their effort to destroy EACONOMY's business.

35. EACONOMY has learned that the defendants, including the distributor defendants, have been raiding the EACONOMY downlines and soliciting its distributors to leave EACONOMY and join AUVORIA PRIME. To accomplish this raiding, the Defendants sabotaged EACONOMY's back office giving the appearance that EACONOMY was poorly managed. The Defendants then used the nonfunctioning back office as a tool to convince distributors to leave EACONOMY and join AUVORIA PRIME and have been using other disparaging and untrue statements about EACONOMY and its management. Moreover, the Defendants have misappropriated the EACONOMY data base of distributors and have been using the information to conduct their raids.

**FIRST CLAIM FOR RELIEF**
**(<u>FOR VIOLATON OF THE DEFENSE OF TRADE SECRETS ACT</u>)**
**AGAINST ALL DEFENDANTS**

36. EACONOMY realleges and incorporates herein by reference every allegation contained in the preceding paragraphs as though set forth fully herein.

37. EACONOMY owns a data base containing valuable information including the identities and contact information of all its independent distributors and customers. This computer database has substantial economic value. Network marketing companies refer to this data base as their "genealogy" or "downline." A network marketing company's genealogy or downline is its lifeblood

WELLMAN & WARREN
Attorneys at Law
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
(949) 580-3737

11

COMPLAINT

because it would have no way to sell its products to consumers without its sales force of independent distributors. Other network marketing companies are constantly competing with EACONOMY for the services of these independent distributors and for its customers, so EACONOMY takes great precautions to guard the identities of these people.

38. Such precautions include having each distributor agree that the information is confidential and proprietary to the company.

39. The defendants improperly used and disclosed EACONOMY's data base to solicit independent distributors to quit EACONOMY and to join AUVORIA PRIME.

40. The defendants knew or had reason to know they had acquired EACONOMY's trade secrets by improper means.

41. EACONOMY's genealogy/downline data base was a trade secret at the time it was misappropriated by the defendants.

42. The defendants used the EACONOMY trade secrets without either express or implied consent of EACONOMY.

43. The defendants were unjustly enriched as a result of using EACONOMY's data base.

44. The defendants' use and disclosure of EACONOMY's genealogy was a substantial factor in causing their unjust enrichment.

45. As a direct and proximate result of the defendants' use of EACONOMY's genealogy/downline information, EACONOMY has suffered damages in an amount that will be proven at trial.

///

///

///

WELLMAN & WARREN
Attorneys at Law
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
(949) 580-3737

12

**COMPLAINT**

## SECOND CLAIM FOR RELIEF
### (FOR MISAPPROPRIATION OF TRADE SECRETS; CA. CIVIL CODE §3426 et. seq.)
### AGAINST ALL DEFENDANTS

46. EACONOMY realleges and incorporates herein by reference every allegation contained in the preceding paragraphs as though set forth fully herein.

47. Defendants acquired or knowingly used confidential and proprietary information including, but are limited to, EACONOMY's data base of distributors. Said information are trade secrets of EACONOMY, as defined by Common Law and the California Uniform Trade Secret Act.

48. EACONOMY takes reasonable efforts to protect its trade secrets, including user identification, password protection, and written policies confirming the confidential nature of this material.

49. As current and/or former ISPs, the individual distributor defendants, agreed that the data base of distributors constituted a proprietary trade secret of EACONOMY.

50. EACONOMY took reasonable efforts to protect the secrecy of its distributor data base (i.e. the EACONOMY GENEAOLOGY) incorporating an agreement with each ISP that said data base were confidential trade secrets of EACONOMY. Furthermore, EACONOMY took reasonable efforts to protect the data base by allowing access to it only through authorized passwords.

51. EACONOMY derives economic value from the secrecy of said confidential information and use of such information is valuable to any competitor of EACONOMY.

52. Plaintiff is informed and believes, and on that basis alleges, that all Defendants either by themselves or in concert with others, misappropriated EACONOMY's distributor data base, and Defendants converted said information, then owned by EACONOMY, and used it knowing that said information constituted trade secrets and without the express, implied authority or consent of EACONOMY.

53. Defendants, after misappropriating EACONOMY's trade secrets, have used the trade secrets to unlawfully and tortiously interfere with EACONOMY's relationship with its ISPs and its business, and have used it to unfairly compete with Plaintiff.

WELLMAN & WARREN
Attorneys at Law
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
(949) 580-3737

13

**COMPLAINT**

54. As a proximate result of Defendants' actions described hereinabove, Plaintiff has sustained economic losses to be proven at time of trial.

55. Unless Defendants are enjoined from further use of the data base, EACONOMY will be irreparably harmed.

**THIRD CLAIM FOR RELIEF**
**(FOR BREACH OF FIDUCIARY DUTY)**
**AGAINST DEFENDANTS S. LETO, V. LETO, WYNN, MARADONA, AND PHAIR**

56. EACONOMY realleges and incorporates herein by reference every allegation contained in the preceding paragraphs as though set forth fully herein.

57. Defendants S. LETO, V. LETO, WYNN MARADONA, and PHAIR are all former executive officers and/or employees of EACONOMY and owed fiduciary duties of care and loyalty to EACONOMY during the time when they were officers and or employees of the company.

58. As a direct result of the acts and omissions by these Defendants described herein, each of them has violated their fiduciary duties of loyalty and care to EACONOMY.

59. As a result of such breaches of fiduciary duty, EACONOMY has been damaged in an amount to be proven at trial.

60. The actions of these Defendants were premeditated and were done with oppression, malice, and a complete disregard for the rights of EACONOMY. Therefore, in addition to EACONOMY's other damages, the Defendants are liable for punitive and exemplary damages pursuant to California Civil Code § 3294.

**FOURTH CLAIM FOR RELIEF**
**(FOR BREACH OF CONTRACT)**
**AGAINST THE DISTRIBUTOR DEFENDANTS**

61. Plaintiff realleges and incorporates herein by reference every allegation contained in the preceding paragraphs as though set forth fully herein.

62. EACONOMY entered into a written agreement with each of the distributor Defendants.

**COMPLAINT**

63. EACONOMY did all, or substantially all of the significant things that its contracts required it to do or, if it did not, then it was excused from having to do those things.

64. The distributor defendants have breached the agreement by using the EACONOMY trade secrets to their advantage, by using EACONOMY sanctioned events to improperly recruit distributors to join AUVORIA PRIME and to sell AUVORIA PRIME PRODUCTS.

65. EACONOMY has been damaged by these contractual breaches in an amount to be proven at trial.

**FIFTH CLAIM FOR RELIEF**
**(FOR FRAUD AND DECEIT)**
**AGAINST DEFENDANTS S. LETO, V. LETO, WYNNE, MARADONA, AND PHAIR**

66. Plaintiff realleges and incorporates herein by reference every allegation contained in the preceding paragraphs as though set forth fully herein.

67. Defendants S.LETO, V. LETO, WYNNE, MARADONA, and PHAIR concealed from the EACONOMY Board of Directors their involvement in creating and promoting AUVORIA PRIME, and their intention to raid EACONOMY and transfer all of its assets and business to AUVORIA PRIME and to destroy EACONOMY's ability to do business.

68. EACONOMY and its Board of Directors were ignorant of these Defendants' true plans and intentions and relied on their concealment of their true intentions and had no reason to suspect that they were concealing anything.

69. In reliance on this concealment, EACONOMY has been damaged in an amount to be proven at trial.

70. The actions of the Defendants were premeditated and were done with oppression, malice, and a complete disregard for the rights of EACONOMY. Therefore, in addition to

WELLMAN & WARREN
Attorneys at Law
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
(949) 580-3737

15

**COMPLAINT**

EACONOMY's other damages, the Defendants are liable for punitive and exemplary damages pursuant to California Civil Code § 3294.

### SIXTH CLAIM FOR RELIEF
### (FOR DEFAMATION)
### AGAINST DEFENDANT S. LETO

71. EACONOMY realleges and incorporates herein by reference every allegation contained in the preceding paragraphs as though set forth fully herein.

72. On March 4, 2020, S. LETO, published the false statement that EACONOMY (1) is run by incompetent people and that (2) it does not pay commissions to its distributors and (3) is going out of business.

73. S.LETO made these statements in an effort to injure the reputation of EACONOMY and its ability to do business. He did so to facilitate his plans to steal all of EACONOMY's business, including its entire distributor base, and transfer that business and distributors base to his new business, AUVORIA PRIME.

74. S. LETO made such false statements without any reasonable grounds for believing they were true.

75. The aforesaid false statements disparaged EACONOMY's reputation.

76. In making the aforesaid false statements, S. LETO intended to and/or should have known that such false statements would cause harm to EACONOMY's reputation.

77. As a direct and proximate result of this Defendant's actions, EACONOMY and the plaintiffs have been injured in an amount to be proven at trial.

78. The action of this Defendant was premeditated and was done with oppression, malice, and a complete disregard for Plaintiff. Therefore, in addition to the Plaintiffs' other damages, the defendants are liable for punitive and exemplary damages pursuant to California Civil Code §3294.

WELLMAN & WARREN
Attorneys at Law
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
(949) 580-3737

16

**COMPLAINT**

**SEVENTH CLAIM FOR RELIEF**
**(FOR UNJUST ENRICHMENT)**
**AGAINST ALL DEFENDANTS**

79. EACONOMY realleges and incorporate herein by reference every allegation contained in the preceding paragraphs as though set forth fully herein.

80. The Defendants received the benefits of EACONOMY's proprietary list of independent distributors and customers.

81. Defendants retain those benefits.

82. Defendants' retention of the benefits, which are alleged herein, is at the expense of EACONOMY.

83. The continued retention of these benefits by the Defendants is unjust and the amount of those benefits shall be proven at trial.

**EIGTH CLAIM FOR RELIEF**
**(FOR VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200 ET SEQ.)**
**(AGAINST ALL DEFENDANTS)**

84. Plaintiff realleges and incorporates herein by reference every allegation contained in the preceding paragraphs as though set forth fully herein.

85. The Defendants' conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent trade practices which violate California Business and Professions Code § 17200.

86. EACONOMY is entitled to restitutionary and injunctive relief pursuant to Business and Professions Code § 17200 et seq.

**NINTH CLAM FOR RELIEFAUSE OF ACTION**
**(FOR INTERFERENCE WITH CONTRACTUAL RELATIONS)**
**(AGAINST ALL DEFENDANTS)**

87. EACONOMY realleges and incorporates herein by reference every allegation contained in the preceding paragraphs as though set forth fully herein.

WELLMAN & WARREN
Attorneys at Law
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
(949) 580-3737

17

COMPLAINT

88. As part of its day-to-day business operation, EACONOMY entered into contracts with its distributors to market and distribute the EACONOMY products.

89. Defendants knew or should have known of the existence of such contracts.

90. Defendants have engaged either intentionally or negligently in a carefully planned course of conduct to induce the EACONOMY distributors to terminate their existing contracts with EACONOMY and to enter into contracts for the same or similar services with AUVORIA PRIME.

91. As a result of Defendants' actions, EACONOMY's distributors have terminated their entire contracts or the remaining portions of their contracts with the Plaintiff and entered into contracts for the same or similar services with AUROIA PRIME.

92. As a result of Defendants' wrongful conduct Plaintiff has been damaged in the amount to be proven at trial.

93. EACONOMY's further seeks equitable relief enjoining the Defendants from using EACONOMY's proprietary, confidential, and trade secret information and enjoining Defendants from improperly soliciting EACONOMY's clients.

94. The acts of all Defendants were premeditated, willful, wanton, malicious, oppressive, and outrageous, and justify the awarding of punitive or exemplary damages against Defendants.

**TENTH CLAIM FOR RELIEF**
**(FOR INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE)**
**(AGAINST ALL DEFENDANTS)**

95. EACONOMY realleges and incorporates herein by reference every allegation contained in the preceding paragraphs as though set forth fully herein.

96. As part of its day-to-day business operation EACONOMY entered into contracts with its distributors to market and distribute the EACONOMY products. EACONOMY has an existing

prospective business relationship with such distributors as well as potential distributors, which results in a high probability of future economic benefit from such relationship.

97. Defendants knew or should have known of the existence of such business relationships.

98. Defendants have either intentionally or negligently engaged in a carefully planned course of conduct to interfere with such business relationships. Such wrongful conduct is separate and independent from the interference itself.

99. As a result of Defendants' wrongful conduct Plaintiff has been damaged in the amount to be proven at trial, but not less than the jurisdictional minimum of this Court.

100. Plaintiff further seeks equitable relief enjoining the Defendants from using Plaintiff's proprietary, confidential, and trade secret information and enjoining Defendants from soliciting Plaintiff's clients.

101. The acts of all Defendants were premeditated, willful, wanton, malicious, oppressive, and outrageous, and justify the awarding of punitive or exemplary damages against Defendants.

///

///

///

///

///

///

///

///

///

///

///

WELLMAN & WARREN
Attorneys at Law
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
(949) 580-3737

19

**COMPLAINT**

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendants, and each of them, as follows:

1. For compensatory damages in an amount to be proven at trial;
2. For punitive damages;
3. For temporary and permanent injunctive relief;
4. For restitution and disgorgement.
5. For constructive trust or alternatively for equitable lien;
6. For an award of attorney's fees;
7. For costs of suit herein incurred; and
8. For such other and further relief as the court may deem just and proper.
9. 

Dated: March 20, 2020                **WELLMAN & WARREN LLP**

                                    By:  */s/ Scott Wellman*
                                         Scott W. Wellman
                                         Attorney for Plaintiff,
                                         Eaconomy, LLC

WELLMAN & WARREN
Attorneys at Law
24411 Ridge Route, Suite 200
Laguna Hills, CA 92653
(949) 580-3737

20

**COMPLAINT**