1

2

3

4

5

6

7

8                                UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   EACONOMY, LLC, a Delaware Limited          No.  1:20-cv-00423-NONE-BAM
     Liability Company,
12                                              ORDER DENYING PLAINTIFF'S MOTION
                   Plaintiff,                   TO SHOW CAUSE AS TO WHY
13                                              DEFENDANTS SHOULD NOT BE HELD IN
            v.                                  CIVIL CONTEMPT
14
     AUVORIA PRIME, LLC, *et al.*,              (Doc. No. 37)
15
                   Defendants.
16

17          One month after this trade secret action was filed, the court entered a temporary

18   restraining order ("TRO") on April 20, 2020, pursuant to the parties' stipulation.  (Doc. Nos. 23–

19   24.)  The TRO restrained defendants Auvoria Prime, LLC ("Auvoria") and Sal Leto ("Leto")

20   from certain recruitment of plaintiff Eaconomy, LLC's distributors,[1] as well as mandated

21   defendants to give notice of the restraint to their distributors.  (Doc. No. 24 at 4.)  About six

22   weeks after that TRO was entered, plaintiff brought the instant motion seeking the issuance of an

23

24   _____

     [1]  According to the complaint, defendants and plaintiff are multi-level marketing companies that
25   market software products allowing Independent Software Partners, also known as "distributors,"
     to trade on the FOREX (i.e. the foreign current exchange) markets.  (Doc. No. 1 at ¶¶ 25-26, 35.)
26   A distributor earns commissions on his/her sale of software products and sale by other
     "distributors aligned in multiple levels beneath the distributor"; it is asserted that distributors are
27   the "life-blood of any multilevel marketing company," including Eaconomy.  (*Id.* at ¶¶ 26-27.)
     Leto is a former executive of Eaconomy, but left Eaconomy in February 2020 to form a
28   competitor, Auvoria.  (*Id.* at ¶¶ 2-3, 33, 57.)

                                                    1

1    order to show cause why defendants should not be held in civil contempt of court, accusing

2    defendants of violating the TRO.  (Doc. No. 37 at 1–2.)  Defendants submitted a response on June

3    18, 2020, disputing plaintiff's accusation in this regard.  (Doc. No. 50.)  A week later, plaintiff

4    replied.  (Doc. No. 53.)  For the reasons explained below, plaintiff's motion for the issuance of an

5    order to show cause will be denied.

6    **LEGAL STANDARD**

7        "The power to punish for contempts is inherent in all courts; its existence is essential to

8    the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders,

9    and writs of the courts, and, consequently to the due administration of justice."  *Bessette v. W. B.*

10    *Conkey Co.*, 194 U.S. 324, 327 (1904) (citation omitted).  "A court's contempt powers are

11    broadly divided into two categories:  civil contempt and criminal contempt."  *Shell Offshore Inc.*

12    *v. Greenpeace, Inc.*, 815 F.3d 623, 628 (9th Cir. 2016).  As relevant here, civil contempt

13    "'consists of a party's disobedience to a specific and definite court order by failure to take all

14    reasonable steps within the party's power to comply.'"  *Reno Air Racing Ass'n., Inc. v. McCord*,

15    452 F.3d 1126, 1130 (9th Cir. 2006) (citation omitted).  Willfulness or intent "is not an element of

16    civil contempt."  *United States v. Asay*, 614 F.2d 655, 661 (9th Cir. 1980) (citation omitted); *see*

17    *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983) (citations omitted).  "Judicial sanctions

18    in civil contempt proceedings may, in a proper case, be employed for either or both of two

19    purposes; to coerce the defendant into compliance with the court's order, and to compensate the

20    complainant for losses sustained."  *United States v. United Mine Workers of Am.*, 330 U.S. 258,

21    303–04 (1947) (citation omitted).

22        To establish civil contempt, plaintiff here bears the burden of showing "(1) that

23    [defendants] violated the court order, (2) beyond substantial compliance, (3) not based on a good

24    faith and reasonable interpretation of the order, (4) by clear and convincing evidence."

25    *Labor/Cmty. Strategy Ctr. v. Los Angeles Cty. Metro. Transp. Auth.*, 564 F.3d 1115, 1123 (9th

26    Cir. 2009) (alteration in original) (quoting *In re Dual–Deck Video Cassette Recorder Antitrust*

27    *Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)).  "Clear and convincing evidence requires greater proof

28    than preponderance of the evidence.  To meet this higher standard, a party must present sufficient

1    evidence to produce 'in the ultimate factfinder an abiding conviction that the truth of its factual

2    contentions are highly probable.'" *Sophanthavong v. Palmateer*, 378 F.3d 859, 866–67 (9th Cir.

3    2004) (citation omitted); *see also* O'Malley, *et al.*, *Federal Jury Practice & Instructions* § 104:02

4    (6th ed. 2020) ("'Clear and convincing evidence' is evidence that produces in your mind a firm

5    belief or conviction as to the matter at issue.").  The Supreme Court has held that civil contempt

6    "should not be resorted to where there is a fair ground of doubt as to the wrongfulness of the

7    defendant's conduct." *Taggart v. Lorenzen*, __U.S.__, 139 S. Ct. 1795, 1801–02 (2019) (brackets

8    and citation omitted).

9                                                  **ANALYSIS**

10           The resolution of the present motion turns on the first and fourth elements of civil

11   contempt.  (*See* Doc. Nos. 37, 50, 53.)  That is, whether plaintiff has met its burden of

12   establishing by clear and convincing evidence that defendants violated the following terms of the

13   TRO issued by this court:

14   •    "Defendants Auvoria Prime, LLC, and Sal Leto shall NOT, directly or in active concert

15        with anyone else, knowingly recruit, sponsor or solicit any existing Eaconomy, LLC

16        distributor (known as an ISP) or customer to join Auvoria Prime, LLC as a distributor or

17        customer."  (Doc. No. 24 at 4.)

18   •    "Within 48 hours of entry of this Order, Auvoria Prime, LLC shall notify, in writing, each

19        of its distributors of this prohibition by email."  (*Id.*)

20           In the pending motion plaintiff argues that defendants' agent, Catalina Naranjo

21   ("Naranjo"), solicited one of plaintiff's distributors in violation of the TRO, and that the

22   notification letter sent by defendants is *not* sufficiently clear about the TRO's "mandate against

23   recruiting, sponsoring, and soliciting."  (Doc. No. 37 at 2–3, 4–5.)  Plaintiff, therefore, asks the

24   court for "civil coercive sanctions of $20,000 for the contemptuous conduct discussed in this

25   Motion" and "future sanctions of $30,000 for each subsequent violation of the Order."  (*Id.* at 6;

26   *see also id.* ("Auvoria's violation of the Order has not resulted in any losses that Eaconomy is

27   aware of.").  Having carefully considered the evidence presented by the parties with respect to the

28   pending motion, the court finds that plaintiff has failed to establish, by clear and convincing

                                                        3

1    evidence, that defendants have violated the terms of the court's TRO.

2        1.    TRO Terms Prohibiting Defendants' Recruitment, Sponsorship, or Solicitation of

3            Plaintiff's Distributors

4        Plaintiff contends that defendants directly instructed or acted in active concert with

5    Naranjo to recruit, sponsor, or solicit one of plaintiff's distributors, Michael Cuevas ("Cuevas").

6    (Doc. No. 37-8 at ¶¶ 2–3.)  Naranjo is an independent contractor for Auvoria, working only as a

7    Spanish coach to provide "a single, hour-long coaching call each week for Auvoria's Spanish-

8    speaking distributors."  (Doc. No. 50-1 at ¶¶ 1–4.)  On May 15, 2020, Cuevas received the

9    following voice message directly from Naranjo on Instagram:

10           I mean, yeah.  I'm going to be real with you.  I know you're
             launching Eaconomy, but I wish to maybe speak with you in telling
11           you what I have going on, what I have to offer, and tell you how
             that is just not a good idea.  I have been involved with this company
12           from the very beginning . . . .  I'm the head of education, Latin
             America, Spanish.  Corporate brought me on board, and I want to
13           talk to you today.  I have a lot of information you should know that
             I know is going to make you think things twice, so let's get on a
14           call.  What's your number?  Because I think you'll be very
             interested to hear what I got to say.
15

16    (Doc. No. 37-1, Ex. A 1:00–1:58.)  This message alone is neither proof nor a basis for any

17    reasonable inference that defendants were directly acting through or in active concert with

18    Naranjo.  Of course, defendants are not in violation of the court's TRO if Naranjo contacted

19    Cuevas without their involvement.  For this reason, plaintiff focuses on how Naranjo held herself

20    out as the "head of education, Latin America, Spanish" for Auvoria in the voice message left for

21    Cuevas.  (Doc. No. 53 at 3) (quoting Doc. No. 37-1, Ex. A 1:30–37).  Plaintiff also exhibits an

22    Auvoria's webpage showing Naranjo listed under the group "Education & Coaching" with the

23    title, "Airis Coach (Spanish)."  (Doc. No. 53-2 at 3.)  Altogether, the evidence demonstrates,

24    according to plaintiff, that Naranjo was acting as an ostensible agent of defendants.  (Doc. No. 53

25    at 3–4.)  Taken as true, the court is nonetheless unpersuaded by plaintiff's evidence.

26        "Generally speaking, a person may do by agent any act which he might do himself."

27    *Preis v. Am. Indem. Co.*, 220 Cal. App. 3d 752, 761 (1990) (citing California Civil Code §§ 2304,

28    2305).  "Under Civil Code section 2334, a principal is bound by acts of his ostensible agent . . .."'

                                        4

1    *Id.* (quoting Cal. Civ. Code § 2334).  In California, an agent has ostensible authority when "a

2    principal, intentionally or by want of ordinary care, causes or allows a third person to believe the

3    agent to possess."  Cal. Civ. Code § 2317.  "Ostensible authority must be based on the acts or

4    declarations of the principal and not solely upon the agent's conduct."  *Taylor v. Roseville*

5    *Toyota, Inc.*, 138 Cal. App. 4th 994, 1005 (2006) (citation omitted).  "'[O]stensible authority

6    arises as a result of conduct of the principal which causes the third party reasonably to believe

7    that the agent possesses the authority to act on the principal's behalf.'"  *Chicago Title Ins. Co. v.*

8    *AMZ Ins. Servs., Inc.*, 188 Cal. App. 4th 401, 426 (2010) (citations omitted).  "An agent's

9    authority may be prove[n] by circumstantial evidence."  *Tomerlin v. Canadian Indem. Co.*, 61

10   Cal. 2d 638, 644 (1964) (alteration in original) (citation omitted).  California law "indulges in no

11   presumption" that an independent contractor is an agent, but "an agent may [ ] be an independent

12   contractor."  *Jackson v. AEG Live*, LLC, 233 Cal. App. 4th 1156, 1184 (2015) (alteration in

13   original).

14            While Naranjo held herself out as the "head of education, Latin America, Spanish" in the

15   voice message left for Cuevas, nowhere in the message did she represent herself was acting on

16   behalf of either defendant.  *See Pierson v. Helmerich & Payne Internat. Drilling Co.*, 4 Cal. App.

17   5th 608, 635 (2016) (The "ostensible authority of an agent cannot be based solely upon the

18   agent's conduct." (citation omitted)).  In defendants' response, Naranjo attests she never advised

19   or discussed with either defendants her conversation with Cuevas beforehand; no one at Auvoria

20   encouraged her to solicit or contact anyone from Eaconomy; and that she initiated the attempt to

21   contact Cuevas on her own volition.  (Doc. No. 50-1 at ¶¶ 5–7.)  Leto also attests in his

22   declaration that he was not aware of (until counsel informed him of this motion) and did not

23   participate in Naranjo's communication with Cuevas, nor was Leto even aware that Cuevas was

24   an Eaconomy's distributor.  (Doc. No. 50-2 at ¶ 6.)  Plaintiff insists, however, that the

25   declarations of Naranjo and Leto are not to be believed in this regard because "Auvoria's

26   featuring of Ms. Naranjo on their website [ ] amounts to an act [ ] by Auvoria that would lead a

27   reasonable person to believe that Ms. Naranjo had authority to act on behalf of Auvoria."  (Doc.

28   No. 53 at 5.)  This argument totally misses the mark since it is the specific terms of the TRO that

5

must be the focus in considering plaintiff's motion.  *See Taggart v. Lorenzen*, __U.S.__,139 S. Ct. 1795, 1802 (2019) (Because civil contempt is a "severe remedy," the "principles of 'basic fairness require that those enjoined receive explicit notice' of 'what conduct is outlawed' before being held in civil contempt." (citations omitted)).  By the TRO's terms, if Naranjo contacted Cuevas without defendants' knowledge or involvement, defendants have not violated the TRO issued by this court.  (*See* Doc. No. 24 at 4.)  It is not reasonable to infer that by merely featuring Naranjo on Auvoria's website, defendants gave Naranjo the ostensible authority to solicit plaintiff's distributors in violation of the TRO.[2]  *See, e.g.*, *Morse v. Pac. Gas & Elec. Co.*, 152 Cal. App. 2d 854, 857 (1957) (holding that the mere fact of employment does not give the employees the "ostensible authority to modify or terminate their employers' written contracts," nor is it reasonable to infer such ostensible authority).

Other circumstantial evidence before the court further undermines plaintiff's position.  As Leto states in his declaration, Auvoria has approximately 1,500 independent distributors, (Doc. No. 50-2 at ¶ 3), yet plaintiff has presented evidence of only one isolated instance of someone associated with Auvoria contacting one of plaintiff's distributors.  (*See* Doc. No. 37 at 6 (plaintiff admitting that it is not aware of any other such instances)).  Nor has plaintiff provided evidence of other instances in which Naranjo contacted its other distributors.  The isolated nature of the event in question buttresses defendants' showing that they were *not* involved in Naranjo's outreach to Cuevas.  In light of the foregoing, the court finds that plaintiff has failed to present sufficient evidence, whether direct or circumstantial, upon which this court could have "an abiding

/////

---

[2]  The court is likewise unpersuaded by plaintiff's related suggestion that Naranjo is part of Auvoria's "corporate management 'team' and thus is Auvoria herself."  (Doc. No. 53 at 3.)  This conjecture is solely premised on Naranjo's sales pitch portraying herself as "head of education, Latin America, Spanish" in the voice message left for Cuevas.  Auvoria's webpage does not support Naranjo's sales pitch.  On it, Naranjo is listed under the category heading "Education & Coaching" as "Airis Coach (Spanish)" below another person with the title, "Director of Forex Education"; Naranjo is visibly *not* listed under either the heading "Executive Leadership" or "Directors & Chiefs."  (Doc. No. 53-2 at 3.)  Naranjo and Leto have also declared under penalty of perjury that Naranjo has a limited role at Auvoria as an independent distributor and a Spanish coach.  (Doc. Nos. 50-1 at ¶¶ 2–4; 50-2 at ¶¶ 2–5.)

1   conviction that the truth of its factual contentions are highly probable." *Sophanthavong*, 378 F.3d

2   at 866–67.

3         2.    <u>TRO Terms Requiring Defendants to Notify Their Distributors</u>

4         Pursuant to the TRO, defendants sent an email letter to their distributors on April 22,

5   2020, which states in relevant part the following:

6
7
8
9
> We are re-informing and reinforcing our policy that we announced on a zoom during our first week of launch, that we have a zero-tolerance for cross recruiting and with that, we included recruiting people from any previous opportunity that you did not personally sponsor in that opportunity. We do not tolerate cross recruiting or poaching of any kind.

10
11
12
13
> This means that for most companies that you may have come from including but not limited to Eaconomy, IML, Kuvera, Melius, FES, Limbic Arc, and many others that you had, as a part of your distributor agreement, a no-soliciting clause, or a non-compete, in which you agreed to not solicit any members of that company **unless they were people that were personally referred by you, or people that come to you without you soliciting them**.

14   (Doc. Nos. 37-3 at 2; 50-3 at ¶¶ 4–5) (original embolden).  After the instant motion was filed,

15   defendants' counsel reviewed this email message and realized that a necessary footnote was

16   unintentionally omitted; based on communications between Auvoria's executive officers and

17   counsel before the email was sent, defendants intended for the footnote to be included in it.  (Doc.

18   No. 50-3 at ¶¶ 3–4, 7-8, Exs. B–C.)  In civil contempt proceedings, "contemnor is afforded an

19   opportunity to purge" or correct the contemptuous act. *Int'l Union*, 512 U.S. at 829.  "And once a

20   civil contemnor complies with the underlying order, he is purged of the contempt and is free."

21   *Turner v. Rogers*, 564 U.S. 431, 442 (2011).  The law thus affords defendants an opportunity to

22   remedy the unintentional omission of the footnote.  So, on June 18, 2020, defendants sent another

23   email letter with the previously omitted footnote included in the body of the message, stating:

24
25
26
27
28
> Consistent with these standards, Auvoria Prime and Mr. Leto have specifically committed that they will not, directly or in concert with anyone else, knowingly recruit, sponsor or solicit any existing Eaconomy distributor or customer.  This does not prevent anyone from soliciting his or her personally sponsored downline at Eaconomy, nor does it prevent anyone at Eaconomy who has not been solicited from joining Auvoria Prime.  Nevertheless, this is a legally enforceable commitment that is fully consistent with our

1    values here at Auvoria Prime.

2  (Doc. No. 50-3 at ¶¶ 7–9, Ex. D; *see also* Doc. No. 50-4 at ¶¶ 2–3.)  The court therefore will

3  construe the April 22 and June 18, 2020 email messages together to determine whether

4  defendants have complied with the terms of the TRO issued by this court.  So construed, the court

5  finds that the two email messages have informed defendants' "distributors of th[e] prohibition by

6  email" as specified in the TRO.  (Doc. No. 24 at 4 (alteration in original).)

7           The second email message sent by defendants addresses the majority of the arguments

8  raised by plaintiff in its motion and reply, (Doc. Nos. 37 at 5–6; 53 at 1–2), except for one central

9  contention:  that the second email "letter buries the statements relating to the Order between

10  unrelated announcements and topics in a manner that does not convey the seriousness of the

11  Order or expressly state that the language is the text of a Court order."  (Doc. No. 53 at 3.)  The

12  TRO, however, does not require the prohibition statement to be in a certain order within a

13  particular message.  Nor does the TRO by its terms require the prohibition statement to be

14  independent of other messages, or to restate verbatim the TRO language, or to convey a "serious"

15  tone.  *See Reno Air Racing*, 452 F.3d at 1132 ("'If an injunction does not clearly describe

16  prohibited or required conduct, it is not enforceable by contempt.'"  (citation omitted)); *id.* at

17  1130 ("a person should not be held in contempt if his action 'appears to be based on a good faith

18  and reasonable interpretation of the court's order.'"  (citation omitted)).  In short, the court cannot

19  hold defendants in civil contempt for violation of requirements not specified in the TRO.  *See id.*

20  at 1132; *Taggart*, 139 S. Ct. at 1801–02 (civil contempt is improper "where there is a fair ground

21  of doubt as to the wrongfulness of the defendant's conduct").  Moreover, even if the court were to

22  agree with plaintiff's argument as to defendants' first email message, the court finds that the two

23  messages sent by defendants, when read together, substantially comply with the TRO.  *See*

24  *N.L.R.B. v. A-Plus Roofing, Inc.*, 39 F.3d 1410, 1418 (9th Cir. 1994) ("substantial compliance

25  /////

26  /////

27  /////

28  /////

8

1    purges civil contempt").[3]  For these reasons, the issuance of an order requiring defendants to

2    show cause why they should not be held in civil contempt for violating the terms of the court's

3    TRO is not called for at this time.

4                                      **CONCLUSION**

5            Because plaintiff has failed to justify civil contempt by clear and convincing evidence, its

6    motion for the issuance of an order requiring defendants to show cause why they should not be

7    held in civil contempt of court (Doc. No. 37) is DENIED.

8    IT IS SO ORDERED.

9        Dated:   **August 28, 2020**                    _Dale A. Drozd_

10                                      UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

_____

24   [3]  Plaintiff also argues that "Ms. Naranjo would likely have never attempted to solicit an
     Eaconomy distributor had Defendants properly informed its distributors of the Order's prohibition
25   that the Order required it to." (Doc. No. 53 at 4.)  But the TRO does not hold defendants in
     violation thereof if their independent contractors read the April 22, 2020 message and ignored it
26   (without defendants' involvement).  Moreover, the fact that plaintiff is only able to point to an
     isolated recruitment effort by an Auvoria's independent contractor out of Auvoria's 1,500
27   independent distributors lends weight to the court's conclusion that defendants' messages
     substantially comply with the TRO.
28